# United States Court of Appeals
## For the First Circuit

No. 20-1575

UNITED STATES OF AMERICA,

Appellee,

v.

JUNITO MELENDEZ, A/K/A JUNIOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Nicholas D. Smith, with whom David B. Smith and David B. Smith
PLLC were on brief, for appellant.
Greg A. Friedholm, Assistant U.S. Attorney, with whom Andrew
E. Lelling, United States Attorney, was on brief, for appellee.

October 22, 2021

BARRON, **Circuit Judge**. Junito Melendez appeals the denial of his motion under the First Step Act to reduce his sentence for a more than decade-old federal drug offense. The wrinkle is that he has already served his sentence for that crime. The District Court denied the motion on that basis, deeming it moot. Melendez now contends on appeal that it is not, because, if he is granted the reduction to his former sentence that he requests, then he will be spared the 10-year mandatory minimum prison sentence that he otherwise will have to serve if he is convicted of the new federal drug offense for which he has been indicted. Because we are not persuaded that the sentence reduction that Melendez seeks under the First Step Act could have that consequence even if it were granted, we agree with the District Court that the motion is moot, albeit on somewhat different grounds.

## I.

The First Step Act made retroactive the Fair Sentencing Act's changes to the mandatory minimum prison sentences for certain federal drug offenses. First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018) (codified as amended in scattered sections of 18 U.S.C., 21 U.S.C., and 34 U.S.C.). Those changes increased the amount of cocaine base that must be involved in cocaine-related federal offenses to trigger a 5-year mandatory minimum prison sentence for them. See 21 U.S.C.

§ 841(b)(1)(B)(iii); Fair Sentencing Act, Pub. L. No. 111-220, § 2, 124 Stat 2372, 2373 (2010).

The First Step Act also provides a means by which a defendant can move under 18 U.S.C. § 3582(c)(1)(B) for a reduced sentence consistent with the terms of the Fair Sentencing Act. See First Step Act § 404, 132 Stat. at 5222. On December 23, 2019, Melendez did just that, by filing the motion that is at issue in this appeal.

Melendez's First Step Act motion concerns the sentence that he received on December 21, 2000, in the District of Massachusetts, for his convictions of, among other things, two counts of possession with intent to distribute cocaine base. He was ultimately sentenced for those convictions to 109 months' imprisonment, followed by 5 years of supervised release.

Melendez's supervised release from prison began on March 2007, but he thereafter violated the terms of his supervised release three times. In consequence, he was sentenced in June 2010, to six months' imprisonment, with no further term of supervised release. Thus, as of a decade ago, he had fully served the sentence that he received in 2000.

Despite that fact, Melendez moved in 2019, in the District of Massachusetts, to have his by-then fully served sentence reduced pursuant to the First Step Act. It is that motion that is our focus here.

Melendez's motion contends that the prison sentence that he received in 2000 for his cocaine-related offenses should be reduced by more than half, to a prison sentence of 51 months, consistent with the higher amount of cocaine base necessary to trigger the 5-year mandatory minimum prison sentence under the Fair Sentencing Act for those offenses. He further contends that the request for the reduction is not moot, even though he has fully served that sentence, because he is presently under indictment on a charge of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, which alleges that 500 grams of the cocaine involved in the conspiracy were "reasonably foreseeable and attributable" to Melendez.

Melendez explains that if he is convicted of that pending charge, then he will face a mandatory minimum sentence of 10 years of imprisonment if he is found to have "commit[ted] such a violation after a prior conviction for a serious drug felony or serious violent felony." 21 U.S.C. § 841(b)(1)(B)(ii). He further explains that a "serious drug felony" is defined in 21 U.S.C. § 802(57) as "an offense described in section 924(e)(2) of [T]itle 18 for which (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense."

Thus, Melendez argues, he will be subject to the 10-year mandatory minimum sentence if he is convicted of the pending federal drug charge unless he can show that he was not "release[d] from any term of imprisonment" that was imposed on him for his federal drug convictions "within 15 years" of when he allegedly committed the pending drug conspiracy offense. However, he contends, he will only be able to make that showing if the prison sentence that he received in 2000 is retroactively reduced pursuant to the First Step Act to a prison sentence of 51 months. Hence, he argues, it follows that his First Step Act motion to reduce that sentence is not moot, because that motion is the means by which he can ensure that the new sentence that he faces will be shorter than it otherwise must be.

The District Court nonetheless denied Melendez's First Step Act motion as moot, because it determined that Melendez lacked a "continu[ing] . . . personal stake in the outcome" of the motion. The District Court explained that, because Melendez already had served the sentence that he sought to have reduced, his First Step Act motion was moot unless he could show that the 10-year mandatory minimum prison sentence that he would face if he were convicted of his pending federal drug offense charge would be a "collateral consequence" of that prior sentence. But, the District Court explained, Melendez failed to do so.

- 5 -

The District Court explained that the supervised release components of his 2000 sentence are "component[s] of one unified [2000] sentence." (quoting United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018)).  It thus reasoned that, "even if [Melendez] w[as] entitled to First Step Act relief and a revised sentence of 51 months, he has not demonstrated that he would have completed that sentence . . . more than 15 years before" March 2019.  In so concluding, the District Court appeared to be imagining that the sentence, as reduced, would not be for 51 months of imprisonment full stop, but instead would be for 51 months of imprisonment followed by a period of supervised release of at least three years.

The District Court also found on the merits that, in the event it did have jurisdiction, it would "in its discretion [under the First Step Act] decline to reduce [the] defendant's sentence." The District Court was "dissuaded from exercising its discretion in [Melendez]'s favor" for two reasons: the defendant's "propensity for recidivism and a lack of remorse for his unlawful conduct" as well as the underlying policy concern of rewarding defendants for such conduct by granting sentence reductions under the First Step Act.

Following the District Court's ruling, Melendez filed this timely appeal in which he asks us to vacate the District Court's denial of his First Step Act motion on mootness grounds and remand it to the District Court so that it may be considered

on the merits "consistent with the[] [resentencing] principles" Melendez contends the First Step Act advances.  Our review is de novo.  See Ford v. Bender, 768 F.3d 15, 29 (1st Cir. 2014).

## II.

Melendez acknowledges that the District Court addressed the merits of his motion, notwithstanding the separate ruling on mootness.  But, he contends that the District Court's merits ruling was at the very least "ambiguous," because we cannot know how the District Court would rule on remand if we were to adopt his construction of the First Step Act and thus hold that his motion under that statute to reduce his already served sentence is not moot.  For, in that event, he argues, the District Court's reasons for denying him his requested relief would no longer be applicable.

We have our doubts about Melendez's contention in this regard.  But, it is true that, before we can reach the aspect of the District Court's ruling that concerns the merits of Melendez's First Step Act motion, we must first address whether that motion is moot.  For, if it is, then we have no jurisdiction to consider the motion on the merits.  See United States v. Duclos, 382 F.3d 62, 65 (1st Cir. 2004) (explaining that mootness is a "threshold" jurisdictional issue).

As an initial matter, we note that the District Court premised its ruling as to mootness on the understanding that

Melendez, in seeking a reduction of his fully-served prior sentence to 51 months of imprisonment, was contemplating that some period of supervised release would be tacked on to it. It is not so clear to us that he was. But, Melendez does not dispute on appeal the District Court's assumption that some such period would be tacked on even to the reduced sentence that he seeks. Thus, on appeal, for his contention that his First Step Act motion is not moot to have any hope, he needs to show the following. He needs to show that even if the reduced prison sentence that he seeks were also subject to a period of supervised release, his "release" from the resulting "term of imprisonment" would have occurred -- in the hypothetical world he asks us to imagine -- more than fifteen years in advance of March 2019, the alleged start date of his newly charged criminal conduct.

To make that case, Melendez asserts that no matter how long a period of supervised release might be tacked on to the 51-month prison sentence that he contends should be retroactively "imposed" pursuant to the First Step Act, none of that period would constitute any portion of the "term of imprisonment" referenced in 21 U.S.C. § 802(57). Thus, he contends, the reduction that he seeks under the First Step Act would ensure that his "term of imprisonment" would have come to an end prior to March 2004, such that he would not be at risk of facing the 10-year mandatory minimum prison sentence that would be imposed if he were to be

convicted of his pending federal drug conspiracy charge, regardless of how long a period of supervised release were to be tacked on to it.

In pressing this contention, Melendez acknowledges that the Supreme Court held in Johnson v. United States that "postrevocation sanctions," including prison time for supervised release violations, are "part of the penalty for the initial offense," 529 U.S. 694, 700 (2000). He also acknowledges that the Supreme Court then reinforced that conclusion only recently in United States v. Haymond, 139 S. Ct. 2369, 2380 (2019), when it explained that "[t]he defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime." But, he contends, those precedents have "no purchase on the purely interpretive question of whether Congress intended the phrase 'term of imprisonment' in 21 U.S.C. § 802(57) to incorporate punishment for supervised release violations."

Here, too, we have our doubts. But, even if we were to overlook them, and thus treat the statutory phrase "term of" as if it were referring only to the portion of the sentence "for which" the defendant is required to be in prison and not to include even the portion of time a defendant serves in prison for supervised release violations, Melendez still must show more. Specifically,

he must show that the retroactive reduction in his already-served prison sentence would affect the date of his "release," 21 U.S.C. § 802(57), from it for purposes of § 841(b)(1)(B)(ii).

The problem, though, is that the word "release" -- in ordinary parlance -- is most naturally read to refer to the moment that a person is freed from a "term of imprisonment" that is in fact. It is not easily read to refer to the moment that a person would have been released from a "term of imprisonment" had his sentence been shorter.

Melendez resists this straightforward reading of "release" by arguing that "the First Step Act directs courts to address 'backward-looking questions' with contemporary answers" thereby implicitly permitting "revisionist history." (quotations and emphasis omitted). As a result, he contends, the fact that he was released in March 2007 should not impact whether any of his prior drug convictions qualify as a "serious drug felony." Instead, he argues that it is more consistent with the retroactive nature of the First Step Act for a court to imagine that he had been released after serving the reduced sentence.

But, the word "release" appears in § 802(57), which defines a "serious drug felony" as a certain category of offenses "for which" the defendant "served a term of imprisonment for more than 12 months" and "for which" the defendant's "release from any term of imprisonment was within 15 years of the commencement of

the instant offense." Id. § 802(57) (emphases added). The use of the past tense in setting out both elements of a "serious drug felony" accords with a focus on the historical facts of a defendant's sentence when determining whether § 802(57)'s definition is met. See McNeill v. United States, 563 U.S. 816, 820 (2011) (finding that the "plain text" of a sentencing enhancement required courts to look to the state of the law at the time of the conviction irrespective of any subsequent amendments).

Moreover, the First Step Act, in altering the circumstances in which the mandatory minimum prison sentence that Melendez seeks to avoid triggering applies, now specifically requires that a prior "drug felony" conviction only triggers the mandatory minimum if it is "serious." 21 U.S.C. § 841(b)(1)(B)(ii). That suggests that Congress intended for the backward-looking language of § 802(57), which defines "serious drug felony," to apply to the 10-year mandatory minimum under § 841(b)(1)(B)(ii) -- at least in a case such as this, in which the only basis for imagining that the original sentence ended much sooner than it did is the imposition of a reduced sentence pursuant to the First Step Act.[1]

---

[1] We note in this regard that there is no claim that Melendez's prior conviction was set aside because he received a pardon or a habeas grant based on a finding of actual innocence.

Finally, a backward-looking reading of the word "release" in a case like this one accords with a reasonable understanding of the purposes of § 802(57) and the First Step Act's amendments to § 841(b)(1)(B)(ii). Such a reading takes these provisions to be aimed at deterring recidivism by imposing harsher penalties on those who commit a new federal drug offense too soon after their "release" from prison based on a sentence that was imposed for a previous drug conviction.

Thus, because Melendez was released from imprisonment for his prior convictions, excluding the supervised release violations, in March 2007 regardless of what his "term of imprisonment" for those convictions would be if he were to be resentenced under the First Step Act, we do not see how he has a "personal stake" in whether his First Step Act motion to reduce his already complete, decades-old sentence is granted. Accordingly, for these reasons, we affirm the District Court's decision and dismiss Melendez's First Step Act motion as moot (and, therefore, as beyond the court's jurisdiction).

## III.

For the reasons given above, the decision of the District Court is **affirmed**.